Before we get started, I want to welcome and thank Judge Wong, who is here with us from the District of Colorado. We appreciate her coming in to help out with us. She's here today and yesterday as well. We have three cases for argument today. The first case is Indect USA v. Park Assist, No. 24-1023. Mr. Storm, when you're ready. Good morning, and may it please the Court, I'd like to focus on four issues this morning. One is our request for a new trial with respect to our Lanham Act claim on the basis that the Court excluded evidence at trial after finding the same evidence presented to triable issue of fact on summary judgment. The issue that the patent is invalid for impossibility and the Court's claim construction resolving that impossibility does not comport with claim construction rules and particularly discussion of the cyber settle case, the non-precedential case that the Court relied on in reaching its result. The indefiniteness based on high resolution and the impact of the Kessler Doctrine and the judgments that have been entered that would prevent Park Assist from continuing to threaten or harass potential Indect customers with infringement of this patent in view of the rulings that have happened. Does that last issue only arise in the cross appeal? It's basically in the cross appeal of the issue with respect to subject matter jurisdiction, but it's also related to the Lanham Act claim because we are seeking injunctive relief that they discontinue the actions that we assert were a violation of the Lanham Act. They have effectively discontinued them since the result, but we would like injunctive relief on that, so there is some overlap on those issues. With respect to the Lanham Act claim, our claim is that Park Assist brought and maintained the patent infringement case against San Diego Airport in a way that was in bad faith because it was objectively baseless. That argument was based on evidence that the San Diego Airport never did some of the things that Park Assist asserts constitutes infringement of the method claim at issue here, and that absence of infringement was publicly observable. During the case, Park Assist moved for summary judgment that we could not establish our Lanham Act claim, and the court denied that motion, finding, this is at Appendix 65, that Indect has at least created a tribal issue of fact as to whether Park Assist's continued pursuit of the airport case was objectively baseless, and that included a number of witnesses from the airport, people who had installed the airport system, operated the airport system. Right, but that's a summary judgment decision. It's not an evidentiary decision. The district court has a great deal of discretion under Rule 403 to decide how much time to review for trial, how many witnesses to allow, whether this might confuse the jury. How can we say it was an abuse of discretion here to make the evidentiary decision that you're challenging? A couple of reasons. Number one, it was a time trial, so Indect was already under a time limitation, so Indect was prepared to put on its case. There was no issue about- You didn't ask for more time. We did not ask for more time. The decision that the court made to exclude these witnesses came basically the morning trial started. So we had witnesses lined up, we had deposition testimony designated, et cetera, and we're planning to present that case within the time limits that had already been imposed by the  How would those witnesses, though, pertain to whether or not the patent holder was objectively baseless? I understand how they would pertain to whether or not there was infringement, but how would it pertain to whether or not they persisted in litigation without a basis? They pertain to that because after the litigation got started, this information was provided to Park Assist in various forms, letters from counsel, declarations, and so on, and the case persisted. But maybe more importantly, part of the evidence was that the absence of infringement was observable before the lawsuit was filed, so it was both that they would know that there was no infringement before the lawsuit was filed, after the lawsuit was filed, even if there was some question of good faith at the point of filing, they were given multiple avenues to show that infringement did not occur and persisted in the case. I think it was for two and a half years before that case settled. Also, the evidence was that after the lawsuit was filed, they quickly used that lawsuit in communications with potential customers. So this frequently appeared in a situation where Indec and Park Assist were bidding against each other for a new installation, and Park Assist would say, just be careful, don't do business with Indec, because if you do, you may run afoul of this patent, you might want to think about that, and in case you're curious, we have sued an Indec customer. So they used the existence of that lawsuit to bolster their threats to get business in the bidding process, and we think the combination of showing that the case was meritless from the beginning, was pursued meritlessly, but was used in commercial communications to tip the scales in the bidding process, is an important factor in determining whether the new trial should be permitted. You filed a Rule 11 motion in the airport case. Yes, we did. And the same judge denied it. Yes. Does that have any implications for whether you should be able to prevail on your Lanham Act claim in this case if we were to send it back? I don't think so. The judge considered that issue on the summary judgment, it was argued by Park Assist there, and he held that because the standard regarding conduct of counsel and the meritless case were different, that the denial of the Rule 11 motion did not insulate Park Assist from this claim. That doesn't mean it couldn't be considered further by the district court if the case is returned. And in that regard, if we did remand, if we vacate the judgment of no Lanham Act liability and remand as you ask, they ask in one of their briefs that they be permitted to present their evidence that the airport was infringing. Maybe they would want to present the Rule 11 as well. Is all that fair game and on the table if there's a remand? I think it's fair game for the district court. I don't think that this court needs to rule one way or the other what's admissible on that front. Obviously, part of our Lanham Act claim would be that they acted in bad faith. If that's a subjective standard that we're going to talk about what they knew and what they could have known, they clearly get to rebut that by saying, well, look, what we knew was they actually infringed. So I think a lot of that evidence would come in. And they're not asking us to decide that. I'm not asking you to decide that. I'm happy to answer more questions, but I would like to talk about the impossibility issue and the cyber settle decision. I think that there's really no debate between the parties that the claim as written is impossible. The debate is whether it's properly construed to resolve that problem. Step H is a step that follows F and G's that basically the layout of the claim is that there's cameras monitoring spaces. If the space becomes occupied, status is set to occupied, pictures taken for permit handling, et cetera. Then an image is reviewed to determine whether that occupation status is correct. Step H says if it's incorrect, that is the system has incorrectly identified that a car is in a vacant spot, that error must be corrected. Step I requires extracting a permit. Nobody's debating that you cannot do step H and step I at the same time. One requires a vacant space. One requires an occupied space. The question is whether the resolution of going from one to the other that the court did is correct or not. The court- Isn't that resolved by step D? I'm sorry, step G that says deciding whether said occupied status is incorrect? There's a toggle in step G? Step G says decide whether, but step I as written doesn't state that it is contingent on G. Our view is that that's what the court did. We did it in a flowchart form on page 42 of the blue brief where the court essentially said do G if there's an error, do H if there's not an error, do I. That works as sort of a flowchart, but the claim doesn't say that, so the claim doesn't say and I- Isn't that just a claim construction issue? It is a claim construction issue. And if the claim can be reasonably read to do that from the viewpoint of a skilled artisan, and I don't think the level of skill here is particularly high, why isn't it a proper claim construction? It's not a proper- You're correct that it should be read reasonably if a person learning a skill would do that. We're not challenging that. The problem here is that there's not a claim construction principle that gets us to this result. The claim itself, the language of the claim doesn't do it. And if you look at the specification, there's nothing in the specification that links the permit handling steps of I and J with the review and correction steps of F, G, and H. So when you link them in the claim- No, but it links back up earlier where it talks about taking a picture of the vehicle with the license plate under the high res image, which is what leads to the preferred parking steps, isn't it? You do need the high-resolution image to do the permit handling. I don't know. I just find this argument incredibly overly technical, if you're looking at this from a skilled artisan standpoint, that people can read this and understand what they were trying to invent, and the scope of their invention. And that's all we're looking at in terms of claim construction, and particularly indefiniteness. This is not our typical indefiniteness case, where you have something that specifies a way of doing, or a way of measuring, or some of those things, and there are dozens of ways of doing it, and it doesn't tell you how to do it, and sometimes they end up in different answers. You know exactly what they meant here. They just wrote it badly, and I'll grant you, it is a very badly written claim, because they've added on these steps at the end without rewording the top part. But isn't it still a reasonable claim construction to construe it as, if it's occupied, you do all these steps, and do the preferred parking. If it's unoccupied, you don't. It's hard to argue that that's not reasonable, but I think it didn't follow the claim construction principles. Which one? It sounds to me like you're relying on a very strict, limited by the claim language, plain language standard. And supported by the specification of the prosecution history. I'm in my rebuttal time. I do want to just... Well, let me just ask you one more question. When you say supported by the specification, are you suggesting that those... You're not suggesting lack of enablement or written description, though? I think there would be a written description. It's not a lack of enablement, but it would be a written description in the sense that these two processes, the permit handling and the correction review, are not linked in the written description in any way. But they're both in the written description. They're both in there. Okay. I'm sorry to take more of your time, but I'm confused by your answers to my colleague. Your blue brief says claim one requires the impossible and thus is invalid for lack of enablement. Right. Are we here on pure claim construction question or something where you have a burden of clear and convincing evidence to show that people of ordinary skill in the art would lack reasonable certainty or would be unable without undue experimentation to practice this patent? The lack of enablement is the inability to process both a vacant space and an occupied space at the same time. The question that Judge Hughes asked was... But you have a burden of clear and convincing evidence if you're going to get a judgment from us that these claims are invalid for lack of enablement, right? I think Judge Hughes is right. This is a pure claim construction question, namely whether the resolution that the court came up with is the correct claim construction. Do you have any evidence, and maybe this is what you're trying to tell me, you don't. Do you have any evidence in the record that one of ordinary skill would not be able to understand these claims? The evidence is that one requires a vacant space, one requires... You don't have any extrinsic evidence. You don't have an expert who testifies to that. No, we don't have extrinsic evidence. I did just want to quickly point out we have a regular indefiniteness argument on high resolution as to what is resolution and what is high, and that interacts with one of their arguments where low resolution, they want to read low resolution into one of the claim elements. I'll reserve the rest of my time. Thank you. Counsel, I understand you're splitting time on issues. You can give it a try, but sometimes that doesn't work if we have questions on the same issue, on different issues, but tell us what you're prepared to talk about. Yeah, sure, Your Honor. First, may it please the court, my name is Todd Movar for Park Assist, and thank you for letting us split the time. I intend to address the response to index appeal, and my colleague, Mr. Stimson, intends to address our cross appeal issues. So I would like to take nine minutes of time to address Mr. Storm's arguments, and then he will take four for the cross appeal, and save two for his rebuttal, if that's okay with the court. Go ahead. Thank you, Your Honors. I'd like to start with the Lanham Act issue, and it's our position that the judge acted well within his discretion in excluding the evidence of the airport infringement. So INDECT was planning on bringing in a host of witnesses and many documents, and we had many, many documentary exhibits and witnesses as well. How does the fact that it's a time trial, and they didn't ask for any extra time, impact the, whether this is an abuse of discretion? Well, I can say that without all of these extra witnesses and documents, I think we essentially used all of our time. This ended up being a seven day trial. That doesn't help you. That's after the fact. I mean, I understand lawyers will use all the time you give them. I don't think that proves anything. Are the facts here that the judge set an amount of time? You all thought you were going to try, to whatever extent, the airport litigation as part of this case, and then he took that off the table, but you kept the same amount of time. Well, in a way, but we've maintained our position that the airport evidence shouldn't be admissible, and we maintained that up and through the trial, and at the first day of trial, the court heard many issues that had remained open, including some claim construction issues and this issue, and on the day of trial, things had changed significantly since the time of that summary judgment motion. The court had become much more familiar with the case. He was the same judge on the airport case, and he had learned a lot of facts. But he's not the weigher of evidence. I mean, he has to admit certain evidence in order for the jury to weigh it, and there is no question that to prevail, they would have to establish that the defendant pressed the action for improper malicious purpose. So how were they supposed to satisfy that burden with just what was admitted on the record? As I understand it, the trial court allowed letters to be submitted, but no other evidence with respect to the airport litigation. Yeah, that's correct. So I'd like to start with the fact that this court held in the Zenith case that litigation itself cannot be a basis, is clearly not a basis covered by the Lanham Act, or a basis for bringing a Lanham Act claim. The letters can be, and that's what happened in the Zenith case. And the court, on the first day of trial, said the letters are admissible, and the index can ask questions about them, and that happened. Aside from that, that the litigation itself cannot be a basis. But they had to show that the litigation was objectively baseless in order to show the bad faith to support their claim. And the district court recognized all that at summary judgment, but then didn't let them try to prove that the litigation was objectively baseless. Isn't that what happened? No, I don't think so. So the issue is the difference between the litigation and the letters. The litigation can never be the basis for a Lanham Act claim. The Lanham Act only covers commercial advertising. Did they have to show that the litigation was objectively baseless? No, because the litigation can never be the basis for a Lanham Act claim, even if it was  What is your understanding as to what they failed to prove? When the jury said they didn't prove bad faith, what is it that they failed to prove? So for example, commercial activity. So the Lanham Act is covering commercial advertising and promotion. So one of the things that they argued primarily is that the letters, that the sending of notice letters to several customers constituted unfair competition. They argued that the underlying litigation that they were reflecting in the letters was in bad faith. Well, so there were only about six letters, I think, sent in this case. Most of them did not say anything about the airport litigation. There were only two letters that mentioned the airport litigation. And those are at appendix 17426 and 17457. And those two letters said nothing false. All they said was that there was a case filed against the airport. And what is more, we even put in that letter the airport's defenses to infringement. So at that time, we had some feedback responses from the airport about what their defenses were. And we even included those in the letter. So it's hard to see what was false. And it was certainly, certainly, if you were At page 65 in the district court summary judgment opinion, he wrote, the court finds that INDEC has at least created a triable issue of fact as to whether Park Assist's continued pursuit of the airport case was objectively baseless. Triable issue of fact as to whether your suit, at least the continuation of it, maybe not the filing, was objectively baseless. Therefore, I am denying your summary judgment and we're going to trial. That happened, right? That happened, correct. And then they say, okay, here's our proof. Here's all our witnesses and our documents. We're going to do it within the 16 hours you've allocated to us. We're going to prove our side, and you'll have a chance to prove your side, no doubt, as to whether this case was objectively baseless. But then the judge suddenly says, I'm not going to let you do that. Isn't that an abuse of discretion? No, because the judge had additional information. Again, he was the same judge on the airport case. Did the additional information eliminate what he said was a genuine dispute of fact at the time of summary judgment? Well, so there's a lot of information that came in in this case, and even in this appeal, for example, at page 36 of index brief, where there are statements made that the airport, for example, didn't do X. They didn't have license plate recognition. But there's evidence that they clearly did, including from the airport itself in an interrogatory response where they said they had it on. And there are instances like that where the judge was aware of the situation. He was the judge who handled the Rule 11 motion, and he said it was without merit. And this would have taken over the entire trial. In other words, we would not have been able to put on the other issues in the case, essentially, if we had tried all of it, if all of these witnesses had come in on the airport case. We didn't, there are a lot of issues here. We didn't get to this with your opposing counsel, but I'm going to ask him about it. So I want you to respond to the on-sale bar. Did the district court, is it fair to read the district court's conclusion as saying an offer for sale of a product can never be used to show that a method was on sale? No, I think what the district court said was with respect to these claims. Because a sale can be, an offer for sale of a product. If we read the district court as saying that, that's legally incorrect, right? I think that's right, and I think that the court did not exactly say that. He said with respect to these claims, because these are not product-by-process claims. Well, do they have to be product-by-process claims? Well, if they are, then an offer to sell the product could be prior art to a product-by-process. Yeah, but couldn't a product with a manual that outlines all of the steps in the method claim also show that the method was on sale? That's what I read the district court as excluding. And if that's correct, that that's what he did, and I think that's wrong, doesn't it have to go back for a jury trial? Yeah, I think what the court said, sorry, I'm just trying to. The court said with respect to these claims, and so there are three instances where an offer for sale could be prior art to a process. One is if the offer specifically lists the steps. So he was saying with respect to these claims, the offer doesn't do that, and I think he even made a ruling in that context, that the offer does not describe the steps. The other way is if- But if the product discloses the steps, and it's understood that it's part of the offer, then why isn't that invalidating? Right, so that's number two. That's if the product inherently practices the steps. And in this case, the product is not- It seemed to me that there was essentially agreement in the record that the product did show the steps of this method. No, in fact, at the time, there really was no product. It was just in development. But also, the product, even though it's- Let me ask you this. Did the district court say that the product sold here doesn't disclose any of the steps of the method, it's just a product, and therefore, as a matter of law, it can't be invalidating? Or did the district court say an offer to sell a product can't be an invalidating sale for a method claim? The former sounds like potentially correct. The latter sounds incorrect. And I read the district court as saying the latter. I think it was the former. On appendix page 53 of the order, the judge said, Park Assist also contends that the process claims, like those at issue in the 956 patent, cannot be the subject of an offer for sale. And then he followed that with the court agrees with Park Assist with respect to this. I'm sorry. That sounds exactly like the first one, not the second. Or the second one, not the first one. I'm getting my things mixed up. That sounds like the wrong one. It sounds like you argued to him that an offer to sell a product can't be invalidating for a method claim. No, it's that it can't be invalidating for this type of method claim. This method claim- What's distinct about this method claim from other method claims? Because it's not a method of producing this product. OK. That's wrong. If I disagree with you on that, and I do, then what's your next answer? Well, so the other- The district court- Here's where I'm struggling. The district court did not find that the offer for the sale of the product here couldn't possibly be invalidating because it didn't show all the method steps here. He found, as a matter of law, that it can't be invalidating because an offer to sell a product can't be an offer to sell a method. If that's wrong, then it has to go back, doesn't it? And then you can try to show that the offer to sell this product doesn't actually show all the steps of your method. But the jury didn't get that, and he didn't get there. He cut it off too early. I don't think the offer to sell the product can disclose the steps.  We got that. If that's your position, we don't need to talk about it anymore. On the indefiniteness, the so-called impossibility argument that they make, do you see that as- is that a claim construction argument? Is that a clear and convincing evidence argument? Or how am I supposed to analyze that? Yeah. So that was an enablement issue. It was an enablement issue below, and it was appealed as an enablement issue. So I think it's a clear and convincing evidence standard. Isn't it both enablement and indefiniteness in the brief? They did write that in their heading, but that was not the argument below. There was no indefiniteness argument, and there was also no indefiniteness argument that I saw even within the appeal brief. Why isn't it just a claim construction question? Is it because they didn't preserve it? Or is it because that would be legally wrong for us to look at it that way? Well, yeah. They never actually asked for a construction of Steps I and J below in the way that they're seeking them now. The only issue below was whether Step H was optional. So this issue of claim construction on I and J had not been addressed below at all, and only this enablement argument had been raised, and that's what was appealed. But there's no dispute that no individual user can execute or reach the limitations, every limitation in Claim I. You can't do all of them. Because if you have a vacant space, you don't get to the latter steps. If you have an occupied space, you have to skip a step. Isn't that right? Yes, that's right. And there's no disjunctive in the claim limitation. So it's not an, if this happens, you do this. If this happens, you do that. Would you agree with that? Well, there is in Step H, and there is also some language in Step D, where you obtain the high resolution, which is based on... Right, but it doesn't say, if the space is occupied, you obtain the high resolution. Would you agree with that? Yeah, that's Step D, I think. If the space is occupied. Well, Step D is a fork in the road. It's a weather question, correct? It's an obtain as a result of the space having an occupied status, a high resolution image. Okay. So you don't get a high resolution image unless there's a car there. All right. And then you, but, okay. So you don't get a high resolution image, but you do get a thumbnail that is incorrectly marked. What I'm struggling with is, it seems to me like the district court rewrote the claim for you all. No, I mean, I think it's implicit in the claim language that you are not, and everybody agrees, including index counsel, said that you're not going to extract a permit identifier from a vacant space. And Step D provides some support for that, as well as the patent specification at Column 3, Lines 1 through 36, where it deals with the correction, and you don't proceed past the correction step. But the specification doesn't delineate this fork in the road and the choice between the two concepts. No, it just, it keeps them separate. There's never any discussion of trying to do them together. They're separate processes. So they're like the Aplera case, for example, where the court construed the claim as implicitly allowing only one pass through the steps A and B, and you didn't have to repeat them. Or the other cases we cited, like Interdigital and Schulhauser and Highterra, where the court said you can have this fork in the road and go either way. Weren't these last two steps added as an amendment in order to get the claims? And the district court's view of the claims seems to mean they don't have much weight or any meaning, which seems inconsistent with the prosecution history. I believe that they were added by amendment. I think you're correct. I do not know the answer to the last part of your question there about what the district court stated. Do you think it should impact how we view the claims? It seems like your argument is, well, you can just kind of ignore what we all kind of agree is sort of problematic language. But yeah, it may be that problematic language that actually got you the claims. No, I mean, I think from the perspective of prosecution, those elements are there, and they need to be shown and practiced, if that's your question. But this is sort of the construction, I think, that index seeking is sort of like the Lincoln case, where there was a claim element that said, pay out money, even if there is no cash left in the account. OK, Mr. Melgar, this is why I don't like explaining argument. You've not only exhausted all of your time, you've exhausted all of your counsel's time and his rebuttal time. But Mr. Stimson, I'll give you two minutes, and you can have one minute for rebuttal, if you want. Thank you, Your Honor. Thanks, Your Honor. Thank you. My name is Scott Stimson. I'm with Sills, Cummins, and Gross in New York City. I may please the court. With my two minutes, of course, I'm addressing cross-appeal issues, so I'd like to address the customer issue, if I may please. There are three things the district court did wrong. The first two are the most important, standing and jurisdiction. In order to have standing, to bring this third claim... Didn't you ask for declaratory judgment against their customers? Yes, Your Honor, but that was after... It was a bit of a tricky position, and I don't think I was involved back then, but the district court... You know, saying you weren't involved is not ever a good answer at the appellate court. You have to know what happened. I know what happened, Your Honor. We moved to dismiss. The district court judge said, no, these future claims are still in the case. And so then what we're doing is we're facing a situation where, okay, we don't really think that standing and jurisdiction is correct, but we've got a federal judge who's now told us that there is standing and jurisdiction. So if we don't bring those claims, then we risk waiving them, because they're compulsory counterclaims. So we're in a bit of a pickle, and the only way to resolve that is to bring them. Standing and jurisdiction, for its index third claim, is absolutely wrong. I'm ending my rebuttal time already. But standing index has to have a legal risk to bring those claims. It had no indemnification. They didn't show any indemnification, and so they have no legal risk with regard to that claim. And secondly, on jurisdiction, if you look at those letters we sent, every one of them except for one, index hadn't even purchased a system yet. So we had no quarrel with those customers. There wasn't the real and immediate threat that's needed for the customer case. I'm done. I'm already over. That's okay. We have your argument. Thank you. If he addresses the cross-appeal, I'll give you a full minute back. Thank you. Yeah, I would just briefly like to address the cross-appeal. We have judgment. Why don't you address the on-sale bar? The on-sale bar. On-sale bar. I think you've got it right. I think the judge excluded proof of the on-sale bar from the erroneous legal position that the sale of a product can never be prior art to a method claim, and I think that's wrong. And is that the way you read it? Because it's the way I read it, but if he had read it the other way and said this offer for sale of the product, even though the product itself may practice this method, the offer for sale including the product itself doesn't show the steps. That it may be used for those steps, that would be a different story, right? Your argument, though, is that it's clear from the offer for selling this product, is there a manual or something like this, that those show all the methods. Yeah, the particular document we're talking about is like 50 pages long. It's got a ton of information about how to use the equipment in the method. Okay. And your view is that that discloses all the steps of this method? As construed by the court, yes. And I do think that the question earlier on this impossibility issue was it's claim construction or clear and convincing. I think it's pure claim construction because it's either impossible or it's resolved. And the court resolved it, and that's the question there. With respect to the subject matter jurisdiction, our claim three is not the only issue. We went to summary judgment on their claim against Indec, that Indec induced its customers to infringe. That claim by Park Assist was not limited to customers that have received letters from Park Assist or otherwise. And we moved for summary judgment that they didn't have evidence that any customer directly infringed. Therefore, their claim that Indec induced infringement failed. And they did not respond with any evidence of direct infringement by any customer. When we got judgment on that, that case was over, basically. Their claim that we induced customers to infringe was resolved by judgment, summary judgment. And that's where the Kessler Doctrine comes in. Kessler says, once you've got judgment, that this hasn't happened. They can't do it again just because patent infringement is a continuing, can be a continuing offense. I'm not sure that I follow that. If the judgment was they had no evidence that any particular customer was actually following every step of the method, that's not the same thing, I don't think, as a finding that your product does not itself infringe and can never be used in an infringing manner. And I would have thought the latter is what you need for the Kessler Doctrine to apply. I think there's some nuance there. Basically, I think they had a full opportunity to investigate both the operation of our system and its use by customers. And I think what Kessler would say is if they want to bring a claim now, they have to show a difference between what was at issue in this case and what they would bring the claim about in the future. Is there a finding in our record that your accused product does not infringe and cannot infringe? There is not that finding. But you contend you don't need that for Kessler to apply? I contend we don't need it because it's a hypothetical that's essentially impossible to get to. When you have a method claim and you say somebody can change the method, well, if they change the method, well, then Kessler doesn't provide protection. How about indemnification? Where's the evidence that you actually had to indemnify your client customers? Stephen Evans, our corporate representative, testified that we had indemnification with San Diego Airport, Atlanta Airport, and so on. So it is correct to say that there's not evidence in the record of an indemnification duty for every customer, but it's incorrect to say that there's no evidence of an indemnification duty. But the only evidence of a duty is the oral statement about one customer? No, it was at least two. And I believe the oral statement went further and said, and some others, and I don't recall the names of the others after those two. But I think more importantly is we were subject to a claim of inducement against all customers. And I'm probably out of time, but if you have any more questions, happy to address them. Thank you. With my one minute, there is no evidence in this record of indemnification. If you read what index submitted on indemnification, there's nothing there. Mr. Neff testified that there is something about indemnification. It wasn't attached to any specific customer, let alone all these customers. There's absolutely nothing there. And indemnification should be in writing, of course, assuming the statute of frauds, and it just wasn't there. On the Kessler Doctrine, Kessler attaches to an exonerated product. And as Mr. Storm just admitted, there's no evidence in this record that that index system has been exonerated in any way. There's a basic system, but it's got lots of bits and pieces that you can buy that are optional. And so Kessler has absolutely no applicability here. If there are further questions, otherwise, thank you.  The case is submitted.